Our fifth case for this morning is Christine Kuhl v. United Airlines. And we will hear first from Mr. Patton. Good morning, Your Honors. My name is Dow Patton. May it please the Court, my name is Dow Patton. I represent the appellant and plaintiff below, Christine Kuhn. Your Honors, this appeal presents two issues. First, did the district court abuse its discretion in refusing leave to file a third amended complaint? And second, a de novo review of the summary judgment ruling on her two claims for retaliation under the ADEA and Title VII. First to the- Mr. Patton, even if we were to assume that there was a continuing course of conduct that began before the 2007 EEOC charge and continued through 210 EEOC charge, once Ms. Kuhn failed to sue on the 2007 charge, why should she be given a second bite at the apple for charges that predate that 2007 charge? In other words, if she failed to file to timely sue on the 2007 charge, why should she be able to be allowed to recover damages for any of the acts prior to 2007? Your Honor, that's an excellent question. When we have hostile work environment harassment, hostile work environment harassment itself is perpetuated and goes over a period of time. Now, let's assume that a plaintiff goes to the EEOC and says, look, I'm suffering under a hostile work environment. Give me a right to sue, but doesn't have the resources to go pursue litigation. And then that same hostile work environment has other incidences that continue to occur. That, under Morgan, I would submit, Your Honors, is a classic hostile work environment. But you're going much further than Morgan. I think the question Judge Rogner's asking is an important one. If you've been given the right to sue about the accumulation of events up until that action by the commission, can you just put that in the drawer and come back to the commission again, years and years later, and then reach all the way back in this instance, perhaps to 2003? I'm not familiar with any case that has said that. Now, if a new course of conduct builds up until, let's say, you know, in this instance, it was 2010, she gets the right to, she files a second charge, she gets the right to sue letter. Why isn't that from the old right to sue up to the new one? Why do you just sort of have this perpetual open book? It's not a perpetual open book, Your Honor. If we look closely at the allegations of a third defendant complaint, proposed third defendant complaint. Proposed, yes. Yes, Your Honor. It was to provide the previous pre-2007 facts as background information, not information for which you would receive damages, but background information to show that this is an ongoing pattern that had not been resolved. Well, let me tell you, I have a couple of problems with this. I'll be very quick. First of all, the timing of request for the third amended complaint was well beyond the Rule 16 schedule, and I have trouble saying under the deferential standard of review that we have that the district court abused its discretion in saying no. There would be at least some consequences to the defendant, even if it's not earth-shattering. Secondly, if we're going to look at events after 2007, I have trouble seeing in this record anything other than the kind of workplace annoyance that we have said does not rise to the level of actual workplace harassment. You know, if her response to the to the bumping incident, you know, is that he could have said, excuse me, it strikes me it wasn't the end of the world. It was a bump. It wasn't an assault, etc. I mean, we have said annoying things can but they don't necessarily add up to harassment, and I don't see a pervasiveness in this record that might allow for, you know, the Chinese water torture version of this little bit, little bit, little bit. Your Honor, to your first, to your Honor's first point, with respect to the timeliness, of course, counsel came in late. There's no, there's no, that doesn't change the district court's rule 16b-4. Absolutely, Your Honor, but the the motion was filed immediately upon coming in, and it's important. The Third Amendment complaint requests injunctive relief, and this is really the most important thing here, is to get United Airlines to respond to these types of complaints, to actually follow its own policies and respond to these types of complaints so that that that they can operate and work in an environment that's free from harassment and intimidation. Now, the discovery continued in this matter. So I'm just going to remind you, though, that Rule 54c says the final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. So you didn't need a Third Amendment complaint for an injunction. There's discretion with the court, Your Honor, is correct. Now, with respect to the timeliness, discovery continued for another year. No motion, no dispositive motion had been filed. The court should have exercised its discretion. It's discretionary, though. I mean, United says it would have reopened lines of inquiry that it thought were closed. Your Honor, there's nothing specific in this record other than generalized notions of costs and we would have done something else. There's no indication of what would have been done. What's their burden, though? Isn't the burden on you to show an abuse of discretion? It's not their burden. Absolutely, Your Honor. And we believe that in our briefing that we've shown it, which is the interests of justice require that the conduct that we're talking about here, and this gets to Your Honor's second point, is conduct that in isolation out on the sidewalk may just be a bump, but in the secure area of the aircraft where life and death depend upon following orders and following protocol, that it's a reified, very different type of environment. And the district court abused its discretion in not allowing plaintiffs to get these facts and these claims as hostile work environment harassment and discrimination into a third amended complaint for full and fair consideration, Your Honor. And I see my time's running closer to rebuttal time. I'd like to ask you if there's any evidence in the record establishing that the three supervisors to whom Kuhn complained were aware of her earlier complaints or her 2007 EEOC charge? Because without that evidence, how does she establish causation? In other words, how can she establish that the supervisors retaliated against her because of her earlier complaints? Yes, Your Honor. There's absolutely no admissible evidence in the record, and this is why United failed to meet its Rule 56. It wasn't United's burden. They don't have the burden of proof. Oh, no. They have the burden of demonstrating the lack of a... All they have to say is, we don't think you can... I mean, look at Celatex. They just have to say, we don't think you can prove it. And then you have to come in and show. And we came and we offered evidence in our response to their 56.1 filing that shows the evidence that they've offered is inadmissible. It's hearsay evidence. It's a declaration. They could have brought in these supervisors to swear up a declaration and say, hey, she never told us. But the evidence that is in the record is evidence that Ron Clark, and this is in our response to the 56.1 statement, Ron Clark went back to the domicile and asked and said, hey, Ms. Kuhn's complaining that we're not addressing her complaints. And I believe that's at Appendix 97 and 98. And I'll reserve the rest of my time unless your Honor has another follow-up. Okay, that's fine. You'll have a minute. Thank you. Mr. Kaplan. Thank you, Your Honor. Gary Kaplan on behalf of United Airlines. Perhaps I could start with the last point first that Judge Roebner and Judge Wood asked about, which goes to the required but-for causal nexus between the alleged protected activity and the alleged retaliation. And to be clear, the only allegation ever made in either of the two charges, the EEOC charges here, was a claim of retaliation. It was never a claim of hostile work environment, which is what, of course, is at issue in Morgan. These are strictly allegations of retaliation. Now, the 2010 charge alleged that a plaintiff was retaliated against because of the filing of the 2007 charge. And Judge Roebner, you asked what evidence there is that any of the supervisors were aware of it. What esteemed opposing counsel was referring to was hearsay evidence submitted by Ms. Kuhn outside the parameters of Rule 56-1. Of course, they never submitted their own separate statement of facts. Ms. Kuhn submitted a statement, a declaration, saying Ron Clark, the supervisor to whom he referred, told me this. So that is not admissible evidence. What is admissible evidence, which shows that there is no causal nexus, is the declaration of Ms. Kukla, Karen Kukla, and the 30B-6 deposition of Ms. Roebner. Forgive me, but Ms. Kukla's statement for the proposition that the only people who knew about the 2007 charge were the ones listed. But her declaration doesn't say that these are the only people who knew, just that these people were aware of the charge and may have provided information during the investigation. So what I have been wondering about is what is United's basis for saying that these are the only people who knew? Well, of course, we don't need to show Your Honor that those were the only people, the people that Ms. Kukla lists in her declaration. We need to show that the three supervisors who conducted the investigations of the complaints that arose in the workplace in 2008 and 2009, that those individuals were not aware of it. So could I just say Well, then why do you have to rely on Ms. Kukla's statement at all? Why don't you just say, look, we reviewed the record. There's no evidence in it that the three supervisors knew Kuhn had previously complained or previously filed an EEOC charge. Wouldn't that have shifted the burden to Ms. Kuhn to produce evidence of the supervisor's knowledge? Well, the court below and United here on appeal, we point to two sources of evidence demonstrating that the supervisors involved in the three incidents who investigated the three incidents did not know. Let's skip over Ms. Kukla's declaration for a moment. There was a 30B6 deposition given by Ms. Gist, Diane Gist, G-I-S-T. And contrary to the assertion that that is inadmissible hearsay, it's rather ironic. That deposition was given pursuant to a court order that was in response to plaintiff's own motion to compel United to appoint a 30B6 deponent to testify to those very facts. Did these supervisors know about the 2007 charge? You know, I'm very mixed up about that. You're going to have to help me with this. Yes, Your Honor. Can you cite to a case where the corporate rubric doctrine allowed a Rule 30B6 witness to testify to the personal knowledge of individual employees? It just seems like a stretch to me to be able to use a 30B6 witness to establish what individual employees knew about a claim of discrimination. I really need help with that. Well, Your Honor, that is the very point of the designation of a 30B6 corporate... Maybe I can shed some light on this. I can imagine that a 30B6 witness might be able to say that they were not in the chain of command that United had. I could imagine a 30B6 witness could say, you know, employee or supervisor X was not with United at the time. You know, there are all kinds of official sorts of things that a 30B6 witness could say. I, like Judge Rovner, am not sure why a 30B6 witness could say Ms. Malia didn't know about the charge. For all we know, they had coffee one morning or they were standing by the water fountain. I mean, there are all kinds of ways that people learn. So there's some things that are clearly within a 30B6 witness's purview, but I think some others, not so. Well, as Your Honors know, an individual appointed or designated as a 30B6 deponent on behalf of a corporation like United has an affirmative duty to go out and obtain the information that is being sought. Here, pursuant to plaintiff's motion to compel a 30B6... It's ironic that he is now arguing that it's hearsay when he was the one who sought it in the first place. Beyond that, having succeeded in his motion and United having been compelled by the court to appoint a 30B6 deponent is then to go out and conduct a reasonable inquiry into the matters on which he or she is going to be deposed. What Ms. just did, and her testimony is in the record at, I think, number 126-6, and we cite the testimony in our brief. She went and she spoke to each of the supervisors. It wasn't, gee, it was better than saying they weren't in the chain of command. She actually went and spoke to each of these and said, were you aware of the 2007 charge? And each one of them said, according to her sworn testimony, no, I was not aware. There's no question that that was United's and Ms. just's obligation to do so in response to the motion to compel that testimony, and there's no question that that is not hearsay under Rule 30B6. Does that help, Your Honor? Nope, but thank you. I have to go back and really take a good look at 30B6, I guess. Well, let me refer, let me refer the court to the two cases, two cases that we cite in our, in our brief. There is the Aldridge case. These are both district court cases, which says that while the most personal, most knowledgeable person about the chain of custody, this, this was a case involving the chain of custody. So did you have custody of, apparently it involved a, an eagle statue, a plastic coyote, I'm sorry. Did you have possession of the, of the plastic coyote? And this court acknowledges that the 30B6 deponent in that case adequately, sufficiently prepared for the deposition by talking to her colleagues prior to her deposition to find out who, if any among them, had possession of the plastic coyote. So it's, it's really a plain vanilla sort of 30B6 question. Also a district court opinion without, you know, I myself, I myself like to look at courts of appeals and the Supreme Court of the United States, but okay. Well, and the two cases that we cite, the Aldridge case, Your Honor, and the other one is Wisconsin Alumni Association. Both cite this court's decision in the PPM financial case, which is also cited in our brief on page 31. So there's, there's ample authority for it. And as I say, it's plain vanilla sort of 30B6 stuff. So I understand that she, she was with what, since 1974? That's correct, Your Honor. She was a flight attendant since 1974 and she had been serving as a, in addition, as a purser, what's called a purser. That's who's in charge of that flight, is that what it is? Well, she is the lead flight attendant on the flight. She's not the captain who's always in charge of the flight, but she would be the lead. She would be the lead flight attendant. Is she still working? She is still working, Your Honor. It's a pretty long haul. Is there a history or something that shows some problem? Because she seems to cause others to react as well, like one pilot that won't fly with her or something. Well, that goes, that's part of, that's part of the evidence that, that was properly excluded as, as time barred and not part of the continuing violation doctrine. There was a captain with whom she has had run-ins since, which, which she had had run-ins since 2003, and our position is to inject those sorts of issues into this case now some 13 years later would be probably unfair and prejudicial. I guess I only point is she's been there a long time and seems to adjust accordingly. I'm sorry, she seems to adjust better. I know she said something kind of nasty to the guy that bumped into her as well. She, she did, Your Honor, and, and as to that incident, the, the galleries are very small, as you know, and the flight attendant involved in that apologized to her. So I, it's, it's, this is not the proper forum to opine or speculate as to, as to plaintiff's workplace demeanor, but she's been there for a very long time and to my knowledge since the 20, 2010 charge, 20, 2010 charge, there have been no further incidents involving her. All right. Thank you very much, Mr. Kaplan. I think you have about a minute, Mr. Patton. Thank you, Your Honor. Very briefly on my previous citation of the record, it's at appendix 91, not 87. Your Honor, the, the 30B6 deposition testimony had to be compelled and it had to be compelled because Ms. Gist was insufficiently educated to be able to tell us what investigations had been performed into these complaints. When we asked for the documents as part of the 30B6 deposition, we didn't get any documents, even though Ms. Gist said that she reviewed those documents. In fact, that was the basis of our 56D1 motion to deny or continue the summary judgment in this matter because we didn't get these underlying documents that we had asked for, presumably because those documents would have reflected that the, uh, the, the, the history of Ms. Kuhn's complaints. It's, it's, it's our position that Ms. Kuhn has made complaints over time as they have arisen and that she is known and has been told that her complaints will not, no longer be heard because they're tired of hearing the complaints. And Your Honor, I believe that, um, the, the, under the prevailing standard for Rule 5060 that the court, uh, the both counsel will take the case under advisement.